UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LIMBER JAVIER ESTEBAN LOPEZ,

Petitioner,

v.

CHRISTOPHER CHESTNUT, Warden,
California Detention Facility, et al.,

Respondents.

Case No.  1:26-cv-02629-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO
GRANT PETITION FOR WRIT OF HABEAS
CORPUS[1] AND DENY RESPONDENT'S
MOTION TO DISMISS

(Docs. 1, 9)

FIVE-DAY OBJECTION PERIOD

Petitioner Limber Javier Esteban Lopez, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, initiated this action by filing a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 on April 8, 2026.  (Doc. 1, "Petition").  The Petition raises three grounds for relief: (1) Petitioner's re-detention after his prior release under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") violated his substantive due process rights under the Fifth Amendment; (2) Petitioner's arrest and re-detention after previous after his prior TVPRA release violated his procedural due process rights under the

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

Fifth Amendment; and (3) Petitioner is not subject to mandatory detention under Immigration and Naturalization Act ("INA") and, as a *Maldonado Bautista* class member, he is entitled to consideration for release on bond under 8 U.S.C. § 1226(a). (*Id*. at 7-12); *see Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025). As relief, Petitioner seeks, *inter alia*, release from custody. (*Id*. at 12).

On April 28, 2026, Respondents filed an Answer to the Petition (Doc. 8) and a motion to dismiss all Respondents other than Petitioner's immediate custodian (Doc. 9). In the Answer, Respondents argue the Court should deny the Petition because (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission," and is therefore ineligible for a bond hearing; and (2) Petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." (Doc. 8 at 1-3). Respondents also argue, in the alternative, that if the Court grants the Petition, the proper remedy is a bond hearing under 8 U.S.C. § 1226(a), at which Petitioner bears the burden of showing he is not a danger to the community or a flight risk. (*Id*. at 3-4). Petitioner filed an opposition to the motion to dismiss (Doc. 11), but he did not file a reply to the Answer, and the deadline to do so has passed. (*See* Doc. 7).

Petitioner is a Guatemalan citizen who was detained at the border and later released under the TVPRA. For the reasons below, the undersigned recommends that the district court grant the Petition on Petitioner's procedural due process claim (claim two).[2]

I.    BACKGROUND

Petitioner is a native and citizen of Guatemala who entered the United States without inspection in 2021, at the age of seventeen, and was detained almost immediately thereafter. (Doc. 1 at 2; Doc. 8 at 8). DHS determined he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i) (alien present without admission or parole) and noted he would be processed as an unaccompanied juvenile. (Doc. 8 at 8). After his detention, the Department of Homeland

---

[2] In light of the Court's conclusion that Petitioner's re-detention violated his procedural due process rights under the Fifth Amendment, and its recommendation that Petitioner be released immediately, the Court declines to address Petitioner's additional claims for relief.

Security ("DHS") transferred him to the custody of the U.S. Department of Health and Human Services ("HHS"), Office of Refugee Resettlement ("ORR"), as an unaccompanied minor. (Doc. 1 at 2). He was then released to his sponsor pursuant to the TVPRA. (*Id*.). On December 20, 2021, Petitioner filed an I-589 application for asylum, withholding of removal, and protection under the Convention Against Torture, and that application remains pending. (*Id*.).

On February 26, 2026, Petitioner was arrested and re-detained by ICE without a pre-deprivation bond hearing. (*Id*. at 3). At the time the Petition was filed, Petitioner was detained in ICE custody at the California City Immigration Processing Center. (*Id*. at 5).

II.   APPLICABLE LAW AND ANALYSIS

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." District courts retain jurisdiction under § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of a removal order. *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

A. Motion to Dismiss

Petitioner names as Respondents Christopher Chestnut, Warden of the California City Detention Facility; Ernesto Santacruz, Director, Los Angeles Field Office, Immigration and Customs Enforcement; and Todd M. Lyons, Acting Director of U.S. Immigration, in their official capacities. (Doc. 1 at 1). Respondents seek dismissal of all named Respondents except the warden. (Doc. 9). They argue that the warden is the only proper respondent. *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held ...." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." *Doe*, 109 F.4th at 1199. However, as repeatedly held by the

3

assigned district judge and courts in this district, while *Doe* held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," 109 F.4th at 1197, the Court "did not necessarily preclude naming more than one respondent so long as the immediate custodian is named." *See, e.g., Bozcok v. Albarran*, 2026 WL 773135, at *1 n.2 (E.D. Cal. Mar. 18, 2026) (denying respondents motion to dismiss and declining to dismiss all "unlawfully named officials"); *see also H.K. v. Noem*, No. 1:26-cv-01158-JLT-SKO, 2026 WL 657729, at *4 (E.D. Cal. Mar. 9, 2026) (recommending respondents' motion to dismiss be denied, and noting that naming only the warden "could lead to problematic results. For example, should the Court grant injunctive [relief] and enjoin Respondents from re-detaining Petitioner, only the warden of the facility would arguably be enjoined, and ICE could readily re-detain Petitioner and place him in a separate facility), *report and recommendation adopted*, 2026 WL 792791 (E.D. Cal. Mar. 19, 2026). Here, Petitioner has named his immediate custodian as a Respondent; therefore, the Court recommends denying Respondent's motion to dismiss the additional named Respondents.

### B. Statutory and Legal Framework

As background, the Court briefly outlines the statutory framework governing detention authority under the INA, and the recent shift in Executive Branch interpretation.

#### 1. Mandatory Detention under 8 U.S.C. § 1225(b)

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted, or who arrives in the United States, is deemed an "applicant for admission." Applicants for admission must be inspected by immigration officers consistent with U.S. immigration law. *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). If an immigration officer determines that an arriving alien is inadmissible and the alien does not indicate an intention to apply for asylum or express a fear of persecution, the officer must order the alien removed without further hearing or review. § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). With certain exceptions, § 1225(b)(2)(A) directs that if am applicant for admission is not "clearly and beyond a doubt" entitled to be admission, "the alien *shall* be detained" for removal proceeding under 1229a. § 1225(b)(2)(A)

4

(emphasis added).  Applicants for admission may be released on parole only for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).

2.   Discretionary Detention under 8 U.S.C. § 1226(a)[3]

Section 1226(a) authorizes the arrest and detention of an alien pending a decision on removal and grants the government broad discretion to continue detention or release the alien on bond or conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)).  Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention, where they must show by a preponderance of the evidence that they are not a danger to the community or a flight risk. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).  After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest the noncitizen "at any time," but courts have held that rearrest must comply with constitutional constraints and generally requires a change in circumstances.  *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025).

3.   Government's Change in Position

Until 2025, DHS applied § 1226(a) and its discretionary release framework to most noncitizens in the United States without valid documentation.  *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  In July 2025, the DHS and DOJ adopted a new

---

[3] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

5

position that § 1225, instead of § 1226, governs detention of all applicants for admission, including aliens present in the United States "who has not been admitted," and that such individuals are subject to mandatory detention under § 1225(b) without bond hearings before an immigration judge, treating these aliens in the same manner that "'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  In September 2025, the BIA issued a precedential decision adopting this interpretation and holding that immigration judges lack authority to grant bond to noncitizens present in the United States without admission, because they are applicants for admission subject to § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

       C.  Due Process

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law. *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001).  The scope of protection varies by immigration status and circumstance. *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").  Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and the Due Process Clause generally requires some form of hearing before the government deprives a person of liberty. *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.  In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.' *"); see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

    *////*

D.  Claim Two: Procedural Due Process

Petitioner claims his arrest and re-detention without a pre-deprivation bond hearing after his prior TVPRA release violated his procedural due process rights.  (Doc. 1 at 7-8).  Respondents do not substantively address his due process argument or acknowledge his prior TVPRA release; instead, they argue that, as an applicant for admission, Petitioner is subject to the mandatory detention under § 1225(b)(2) and is ineligible for a bond hearing.  (Doc. 8).

As a threshold matter, this Court joins the majority of courts in holding that noncitizens previously released on conditional parole and later re-detained are not "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, their detention continues to be governed by § 1226(a) during removal proceedings.  *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

The TVPRA governs the detention of "unaccompanied alien children" in the United States.  8 U.S.C. § 1232.  Under the TVPRA, an unaccompanied child in DHS custody "shall be promptly placed in the least restrictive setting that is in the best interest of the child," and if the minor reaches 18 years of age and is transferred to DHS, the Secretary "shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and risk of flight."  8 U.S.C. § 1232(c)(2)(A)-(B).  Placement after 18 years of age may include an organizational sponsor and a supervised group home.  *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025).  Thus, TVPRA's least restrictive setting requirement conflicts with mandatory detention.  *F.S.S.M. v. Wofford*, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025); *see also R.D.T.M.*, 2025 WL 2686866, at *4.

Here, Petitioner entered the United States at the age of 17 and was classified as an unaccompanied minor under ORR custody and released to his sponsor.  (Doc. 1 at 2).  The documents submitted with Respondent's Answer appear to confirm that Petitioner was placed in removal proceedings, and "is being processed as an unaccompanied juvenile."  (Doc. 8 at 8).

7

Thus, although Petitioner does not expressly rely on this point as an independent basis for relief, his classification as an unaccompanied minor and subsequent TVPRA release indicate that he is not an applicant for admission subject to the conditions of § 1225(b)(2).  *F.S.S.M.*, 2025 WL 3526671, at *4; *see, e.g., Cornejo v. Andrews,* 823 F. Supp. 3d 1085, 1096 (E.D. Cal. 2026) (noting petitioner was designated as an unaccompanied alien child under the TVPRA, and "Respondents fail to identify its authority to reassess Petitioner's status, particularly where Petitioner's immigration case and asylum application are still pending.  In sum, Petitioner is not subject to mandatory detention under § 1225(b)(2)(A)."); *Salvador v. Bondi*, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("when Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal.  That Petitioner should now – approximately four years after entering the country and being released by ORR – be treated as an 'applicant for admission' defies logic."); *Singh v. Stevens*, 821 F. Supp. 3d 898, 908-09 (N.D. Ohio 2026) ("Petitioner was initially detained and released by ORR consistent with the TVPRA. Accordingly, he remains protected under § 1232(c)(2)(B) of the TVPRA and is not an "applicant for admission" subject to mandatory detention under § 1225(b)(2).").

Petitioner argues that his arrest and detention without a pre-deprivation hearing after his prior TVPRA release violated his procedural due process rights.  (Doc. 1 at 7-8).  Procedural due process requires the Court to determine (1) whether a protected liberty interest exists and, if so, (2) what process is due.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).  As noted *supra*, the TVPRA directs ORR to consider danger to self, danger to community, and risk of flight in making a custody determination.  8 U.S.C. § 1232(c)(2)(A).  Petitioner's release and placement with the sponsor therefore reflect the government's determination that he was neither dangerous nor a flight risk and that placement was in his best interest.  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).  Numerous courts have found that where an unaccompanied minor is released by ORR to a sponsor, the minor obtains a

8

liberty interest in continued freedom, even after reaching adulthood. *Vigil v. Chestnut*, 2026 WL 1765207, at *1-3 (collecting cases); *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4-5; *Cornejo*, 823 F. Supp. 3d at 1097-98; *Perez v. Casey*, 2026 WL 370397, at *1 (S.D. Cal. Feb. 10, 2026). Here, Respondents identify no violation of Petitioner's release conditions or other changed circumstances justifying re-detention. The Court therefore finds that Petitioner's TVPRA release and time in the community created a protected liberty interest in continued release.

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[4] 424 U.S. 319, 335 (1976). First, the Court considers "the private interest that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention and maintaining community ties is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033. Thus, Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because Petitioner received no pre-deprivation custody redetermination hearing, the risk of erroneous deprivation is high, and the value of a hearing before a neutral decisionmaker is significant, especially where Respondents make no argument that he is a flight risk or danger or that he did not comply with any conditions of release. *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Court considers the government's interest, "including the function involved and

---

[4] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07. However, in light of the consistent use of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while reserving judgment on whether *Mathews* is an "all embracing test" for due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334. Unquestionably, the government has a significant national interest in enforcing its immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system. However, Respondents do not explain how Petitioner threatens those interests, or why a hearing before a neutral decisionmaker would meaningfully burden the government. Other courts have found such hearings impose only "minimal" costs. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Because Respondents gave Petitioner no notice or reasons before re-detaining him and have offered no explanation in this proceeding for that decision, the Court finds Respondents have not shown a significant countervailing interest in Petitioner's detention. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

On this record, the *Mathews* factors weigh in Petitioner's favor, and the Court concludes his re-detention without a hearing violated his procedural due process rights.

E.  Conclusion and Remedy

The remaining question is the appropriate remedy: pre-deprivation versus post-deprivation process. As he assigned district judge reasoned,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In

*E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at \*4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at \*7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at \*1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

**\*12** In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at \* 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at \*8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at \*5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at \*6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at \*8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at \*11-12.

Here, Respondents offer no evidence that Petitioner violated any conditions of release, and they do not contend he is a flight risk or danger to the community. (*See* Doc. 8). The record contains no indication that his re-detention was based on any alleged release violation. Under these circumstances, a pre-deprivation hearing was constitutionally required.

*////*

11

Accordingly, it is hereby RECOMMENDED:

1. Respondents' Motion to Dismiss (Doc. 9) be DENIED.

2. The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED.

3. Respondents be directed to IMMEDIATELY release Petitioner from DHS custody on the conditions of his prior release.

4. Once released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, including at a minimum, pre-deprivation notice of at least seven days and a pre-deprivation hearing at which the government bears the burden to show, by clear and convincing evidence, that Petitioner is likely to flee or pose a danger if not arrested.

5. If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of that order, Respondent may detain him solely for executing removal but MUST provide a bond hearing within the timeframe required by law.

6. This case be CLOSED.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with

12

specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     June 23, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE